**Finau F. MILA and Anau S. Fainga, Plaintiffs,**

v.

**DISTRICT DIRECTOR OF the DENVER, COLORADO DISTRICT OF the IMMIGRATION AND NATURALIZATION SERVICE, United States Department of Justice, Defendant.**

**Civ. No. C–79–0334.**

United States District Court, D. Utah, C. D.

Aug. 11, 1980.

Charles B. Casper, Fabian & Clendenin, Salt Lake City, Utah, for plaintiffs.

Ronald L. Rencher, U. S. Atty., Wallace T. Boyack, Asst. U. S. Atty., Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This is a review of a decision of the Immigration and Naturalization Service ("Service") denying certain immigration benefits to plaintiffs.

The immigration of aliens to the United States is governed by the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1101 *et seq.* The Act establishes a quota system limiting the number of immigrants in any given year. To determine which prospective immigrants will be given the limited number of available visas, 8 U.S.C. § 1153(a) creates six preference categories. Section 203(a)(5) of the Act, 8 U.S.C. § 1153(a)(5), confers fifth-preference status on the brothers and sisters of United States citizens.

Plaintiff Mila ("Petitioner") filed a visa petition with the Service seeking to have

plaintiff Fainga ("Beneficiary") classified as an alien entitled to fifth-preference status, on the ground that Beneficiary is Petitioner's sister by adoption. The District Director denied the petition on the ground that Tonga, where the adoption took place, does not have a law providing for the adoption of legitimate children. The Board of Immigration Appeals ("BIA") affirmed, holding that if the civil law of a country does not recognize adoptions, no immigration benefits accrue under United States immigration laws based on adoptions alleged to have occurred in that country.

Because the law of Tonga does not provide for adoption of legitimate children, the BIA concluded that Petitioner could not establish that he and the Beneficiary once qualified as "children" of a common parent within the meaning of 8 U.S.C. § 1101(b)(1). Petitioner claims the requisite relationship exists by virtue of his mother's adoption of the Beneficiary. Petitioner asserts that the adoption was accomplished in accordance with 8 U.S.C. § 1101(b)(1)(E), which defines child as:

> [A] child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years . . . .

The administrative record shows that the Beneficiary was adopted shortly after her birth by her natural mother's older sister. Thereafter she was raised as a member of her adopted mother's family, and hence a sister of the Petitioner. This practice is very common among the Tongan people. The record also reveals that Beneficiary's natural parents consented to the adoption and have renounced whatever rights they may have with respect to her. No question was raised in the administrative proceedings about the reality of the family relationship.

Plaintiffs claim that these facts establish an adoption under the BIA's own definition of "[v]oluntary acceptance of a child of other parents to be the same as one's own child." *Matter of Kwok*, 14 I. & N. Dec. 127, 130 (1972). Plaintiffs contend that the BIA's strict rule of recognizing an adoption only when it is affirmatively sanctioned by the local law, regardless of the nature of the local legal system or the local culture, is an erroneous interpretation of 8 U.S.C. § 1101(b)(1)(E) and goes against the intent of Congress to treat adopted children liberally in order to preserve genuine family units.

█ In determining the nature of the local legal system of Tonga, the court may consider any relevant material or source, pursuant to Rule 44.1, Fed.R.Civ.P. Plaintiffs have submitted the affidavit of Viliami Latu Tu'akihekolo and other materials on Tongan law. Defendant has objected to this submission on the ground that the materials were not before the District Director and the BIA. Despite defendant's objection, the court finds that plaintiffs had no opportunity to submit materials on foreign law at the earlier administrative hearings. Therefore, the court will consider the materials submitted by plaintiffs on Tongan law, as well as the materials in the administrative record on Tongan law.

The Kingdom of Tonga is a group of approximately 150 islands in the South Pacific. Prior to 1845, the islands were governed by several local chiefs and were not subject to a central authority. In 1845, one of the chiefs, through a combination of military conquest and Christian conversion, brought the islands under his control and became known as King George Tupou I.

King Tupou was assisted in governing his newly unified kingdom by a number of English missionaries of the Methodist faith. One of the missionaries served as King Tupou's prime minister for many years and drafted a constitution designed to establish a system of law and government on the British model. Much of the impetus for a constitution lay in the fear that unless the Western powers that had forces in the area perceived the Tongan government as "civilized" by Western standards, they were likely to annex Tonga. The constitution was approved and became effective in 1875. Like the English constitution, the Tongan constitution omitted any reference to adoption.

Much of the Tongan legal system is quite different from pre-constitutional Tongan customs. However, where not inconsistent with the constitution or statutes, ancient customs continue to be observed. The Tongan courts enforce these customs on matters not specifically addressed in the constitution or statutes. The Tongan evidence code provides for the admission of evidence regarding customs. The Land Court, which hears all disputes involving land and noble titles, is advised by an "assessor," whose sole function is to sit with the court and advise it of Tongan customs.

For centuries, Tongans have practiced adoption, and the practice is a custom that antedates the constitution. Under the custom, a Tongan family will adopt a child (usually of a close relative) and will treat and raise the child just as a natural child. Customary adoptions are regarded by the community as creating a *bona fide* parent-child relationship. No provision of Tongan law authorizes the government to deprive the adoptive parents of custody of a child adopted in the customary way. If a child's natural parents give him up for adoption in the customary way, but later change their minds, they cannot obtain a court order or other governmental order compelling the child's return.

Given this background of Tongan history and law, it is clear to the court that under the undisputed facts of this case, Beneficiary qualifies under 8 U.S.C. § 1101(b)(1)(E), as "a child adopted while under the age of fourteen years" who has "been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." Having qualified under this section, Beneficiary is entitled to fifth-preference status under 8 U.S.C. § 1153(a)(5).

The court determines that the decisions of the District Director and BIA are unduly restrictive and misinterpret 8 U.S.C. § 1101(b)(1)(E). This court is of the opinion that if a *bona fide* parent-child relationship in fact exists, there is no reason to make a distinction between a society or legal system where such is sanctioned by law or where it is only recognized by custom. Where the clear legislative intent is to preserve the genuine family unit, the important inquiry must be to the reality of the relationship and not to the manner in which it arises.

Accordingly,

IT IS ORDERED that the decisions of the District Director and Board of Immigration Appeals are reversed and this case is remanded to the District Director to enter a finding that Beneficiary qualifies under 8 U.S.C. § 1153(a)(5) as a sister of a United States citizen and for further proceedings consistent with this decision.