# MATTER OF K-S-

## In Exclusion Proceedings

### A-29810907

### *Decided by Board October 5, 1993*

In contrast to the precedential authority of the case law of a United States circuit court, the Board of Immigration Appeals is not bound to follow the published decision of a United States district court in cases arising within the same district. *Matter of Fakalata*, 18 I&N Dec. 213, 217-18 (BIA 1982); *Matter of Melendez*, 16 I&N Dec. 54, 55 (BIA 1976); *Matter of Harris*, 15 I&N Dec. 39, 43 (BIA 1970); and *Matter of Amado and Monteiro*, 13 I&N Dec. 179, 181 (BIA 1969), modified in part.

EXCLUDABLE: Act of 1952—Sec. 212(a)(19) [8 U.S.C. § 1182(a)(19)]—Fraud or willful misrepresentation of a material fact

Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

Sec. 212(a)(26) [8 U.S.C. § 1182(a)(26)]—No valid nonimmigrant visa

ON BEHALF OF APPLICANT:
Paul M. Kaplan, Esquire
Law Offices of Alan M. Kaufman
220 Montgomery Street, Suite 976
San Francisco, California 94104

ON BEHALF OF SERVICE:
Patricia M. Mayberry
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision rendered on February 2, 1993, the immigration judge found the applicant excludable pursuant to the grounds set forth above.[1] Furthermore, the immigration judge denied his petitions for

---

[1] We point out that section 212(a)(26) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(26) (1988), is not an appropriate ground for exclusion in this case. Where an alien has failed to establish his entitlement to status as a nonimmigrant, he is properly excludable under section 212(a)(20) of the Act as an immigrant without the requisite entry documents, rather than under section 212(a)(26) of the Act, as a nonimmigrant lacking the required documentation. *See Matter of Healy and Goodchild*, 17 I&N Dec. 22, 26 (BIA 1979).

Although not applicable to the instant case, the grounds for exclusion were revised and redesignated by section 601(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5067. *See Matter of Papazyan*, 20 I&N Dec. 568 (BIA 1992).

asylum under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) (1988), and withholding of exclusion and deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1988 and Supp. IV 1992), and ordered him excluded and deported from the United States. The applicant, through counsel, has appealed from that decision, but only with respect to the denial of relief from exclusion and deportation. For its part, the Immigration and Naturalization Service contends that the decision of the immigration judge is correct. The appeal will be dismissed.

The record reflects that the applicant is a 26-year-old native and citizen of India, who raised a persecution claim with respect to the authorities as well as an extremist faction in that country. In particular, he related that he is a Sikh from the state of Punjab who lived with his family. He testified that he worked as a farmer and as an automotive electrician. The applicant explained that he also performed various duties at a local Sikh temple, including distributing food, making repairs, and cleaning. He advised that while he believed in the creation of an independent Sikh state, i.e., Khalistan, he was not politically active.

According to the applicant, armed Sikh militants began to visit his family home in 1987. He recalled that they demanded entrance upon pain of death and informed him that if he could not otherwise support their struggle for Khalistan, he should at least provide them with food. He declared that he complied with their demand out of fear. The applicant recounted the militants' warning that they would return periodically and that he should not report their presence to the authorities. He testified that while he was aware of government notices requiring citizens to disclose such contact, he feared retaliation.

The applicant indicated that the terrorists continued to call on him until finally, after some 4 to 5 months, he was arrested by the Punjab police. He noted that he had been implicated by one of the militants who had run afoul of the authorities. The applicant advised that he was held for 6 days and interrogated under torture. He recalled that he was questioned about the extremists, whether he belonged to their group, and why he had not reported them. He stated that he eventually was released due to the intervention of his father and the village leader. He observed that he required medical treatment because of the abuse that he suffered.

The applicant declared that during the following months, both the militants and the police repeatedly visited his family home. He related that the police would come by day, while the militants would arrive at night. He advised that due to his fear of harm from both groups, he stopped sleeping at home and kept a constant watch during the day. The applicant stated that in 1988, he visited an agent in Delhi to assist

him in leaving India. He explained that he could not relocate to another state within the country because the danger was omnipresent and the police could find him anywhere. He indicated that he worked for 2 years to amass the fee required by the agent. He testified that he departed India in November 1990 and travelled to the United States, where he had a lawful permanent resident sister.

The applicant noted that following his arrival in this country, his family informed him that a second member of the militant group had been apprehended by the authorities. He declared that the police apparently learned of his continued contact with the terrorists and warned his family to report his return.[2]

In addition to his own testimony, the applicant offered personal and background documentation in support of his persecution claim. This material included a letter from his village leader generally corroborating his story. He also submitted reports by the Department of State and Amnesty International which discussed the human rights situation in India, including abuses by the security forces in Punjab. The record also contains an advisory opinion issued by the Department of State's Bureau of Human Rights and Humanitarian Affairs ("BHRHA").

At the conclusion of the hearing, the immigration judge denied the applicant's petitions for asylum and withholding relief. Specifically, she determined that the applicant had failed to establish past persecution or the requisite fear of future persecution within the meaning of the Act. On appeal, the applicant contests the immigration judge's holding. He asserts, inter alia, that the facts of his case are identical to those in *Singh v. Ilchert*, 801 F. Supp 313 (N.D. Cal. 1992), where the United States District Court for the Northern District of California found an Indian Sikh from Punjab eligible for asylum. Consequently, he argues that the Board must apply the reasoning of the district court in his case. In response, the Service concedes that this matter arises within the jurisdiction of the *Singh* court. It contends, however, that the Board is not bound by the decision of a district court in such a situation. Instead, the Service maintains that the applicant's case is controlled by the Board's decision in *Matter of R-*, 20 I&N Dec. 621 (BIA 1992), *remanded sub nom. Rana v. Moshorak*, No. CV 93-0274 (C.D. Cal. July 15, 1993), which also involved the persecution claim of a Sikh from the state of Punjab in India.

---

[2] According to the applicant, the militants, unlike the police, stopped visiting his home after he departed India. He explained that the militants generally did not deal with a household lacking male members. In this regard, he observed that his father had died in 1989 and that his brother was constantly travelling.

## PRECEDENTIAL VALUE OF DISTRICT COURT DECISIONS

As a primary matter, we acknowledge that pursuant to our own holding in *Matter of Amado and Monteiro*, 13 I&N Dec. 179, 181 (BIA 1969), the Board is bound to follow the ruling of a United States district court in matters arising within the same jurisdiction. Nevertheless, we conclude that the decision and its progeny[3] represent an incorrect legal position. Consequently, we find it necessary to withdraw from those cases on this limited issue.

We point out that the holding in *Matter of Amado and Monteiro, supra*, was stated in a conclusory fashion without any supporting analysis or authority. Although we have held that published case law from a United States court of appeals must be followed within the same circuit, except in unusual circumstances, *see, e.g., Matter of Anselmo*, 20 I&N Dec. 25, 30-32 (BIA 1989), the issue of district court "precedent" is fundamentally different. In particular, we note that one panel of a circuit court is bound by the unappealed published decision of another panel unless and until the decision is modified by the en banc court. *See, e.g., Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991); *Centel Cable v. White Dev. Corp.*, 902 F.2d 905, 908-09 (11th Cir. 1990). By contrast, district court judges are not bound by the published decisions of their colleagues, even in the same district. *See Starbuck v. City & Cty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977); *Lee v. China Airlines Ltd.*, 669 F. Supp. 979, 981 (C.D. Cal. 1987); *In re Korean Airlines Disaster of Sept. 1, 1983*, 664 F. Supp. 1478, 1480-81 (D.D.C. 1986); *Charley's Taxi Radio Dispatch v. Sida of Hawaii*, 562 F. Supp. 712, 716-17 (D. Haw. 1983), *aff'd in part and rev'd in part on other grounds*, 810 F.2d 869 (9th Cir. 1987); *Indiana Nat. Corp. v. Rich*, 554 F. Supp. 864, 867-68 (S.D. Ind. 1982), *rev'd on other grounds*, 712 F.2d 1180 (7th Cir. 1983); *State Farm Mut. Auto Ins. Co. v. Bates*, 542 F. Supp. 807, 816 (N.D. Ga. 1982); *Hartley v. Sioux City and New Orleans Barge Lines, Inc.*, 247 F. Supp. 1015, 1018 (W.D. Pa. 1965), *aff'd*, 379 F.2d 354 (3d Cir. 1967); *White v. Baltic Conveyor Co.*, 209 F. Supp. 716, 722 (D.N.J. 1962).

Moreover, the United States Supreme Court has made clear that the Federal Government is not restricted by the doctrine of "nonmutual collateral estoppel." *See United States v. Mendoza*, 464 U.S. 154 (1984). Specifically, pursuant to *Mendoza*, the Government's failure to appeal from the adverse decision of a lower federal court does not bar

---

[3]*See, e.g., Matter of Fakalata*, 18 I&N Dec. 213, 217-18 (BIA 1982); *Matter of Melendez*, 16 I&N Dec. 54, 55 (BIA 1976); *Matter of Harris*, 15 I&N Dec. 39, 43 (BIA 1970, *modified on other grounds, Matter of Rivers*, 17 I&N Dec. 419 (BIA 1980). *See generally Matter of Anselmo*, 20 I&N Dec. 25, 30-32 (BIA 1989) (referring to circuit court precedent, but citing to *Matter of Amado and Monteiro, supra*, with approval).

it per se from relitigating the same question in a subsequent case against a different party.[4] The Court noted that there may be many reasons, besides acquiescence, as to why the Government might not seek further review in a particular case.[5] *Id.* at 160-61.

If an agency of the Federal Government were required to follow the decision of a district court within that tribunal's jurisdiction, other judges from that same district would never have the opportunity to review the issue presented. *See United States v. Mendoza, supra,* at 160 (raising the concern that the development of important questions of law might be thwarted). While the reasoning underlying a district judge's decision must be given due consideration, particularly as other judges will apply the "discretionary doctrine of intra-court comity," *see, e.g., Indiana Nat. Corp. v. Rich, supra,* at 868, the analysis does not have to be followed as a matter of law.[6] We are not aware of any valid authority of the United States Court of Appeals for the Ninth Circuit which holds otherwise.[7]

While there are a great number of cases addressing a federal agency's obligation to follow the law of a circuit court, *see, e.g., NLRB*

---

[4]The fact situation in *Mendoza* involved two separate district court jurisdictions, i.e., the Government had failed to appeal from an adverse decision of the United States District Court for the Northern District of California and then sought to relitigate the same underlying issue before the United States District Court for the Central District of California. In rendering its decision, the Supreme Court gave no indication as to whether it would have ruled differently had the facts involved two different judges within the same district. But see *Pierre v. Rivkind,* 825 F.2d 1501, 1505 (11th Cir. 1987), and *Stieberger v. Heckler,* 615 F. Supp. 1315, 1358 n.29 (S.D.N.Y. 1985), *vacated on other grounds sub nom. Stieberger v. Bowen,* 801 F.2d 29 (2d Cir. 1986), which suggest (*Pierre* by its fact pattern) that such a distinction was not material to the Supreme Court's ruling.

As noted in *Stieberger v. Heckler, supra,* at 1359, however: "*Mendoza* does not support [a] right [by the Government] to refuse to apply the legal rules enumerated in a *circuit court decision* in subsequent cases *within the same circuit.*"

[5]In its brief, the Service acknowledges that the Government withdrew its appeal from the decision in *Singh' v. Ilchert, supra.* The Service represents, however, that the withdrawal was mandated by reasons other than acquiescence. Presumably, the Government's decision was motivated by "institutional" or "policy" concerns of the type described in *United States v. Mendoza, supra,* at 160-61, rather than solely by a general fear of establishing adverse precedent.

[6]As a practical matter, of course, the greater the number of judges who ascribe to a particular ruling, the less tenable the Federal Government's opposition in that district becomes. If the holdings were consistently unfavorable, one would reasonably expect the Government either to acquiesce or to appeal, rather than to delay until all or a vast majority of the judges within the district had ruled against it. We note, for example, that the Northern District of California is composed of some 13 sitting judges. *See* 816 F. Supp. VII, XX (Judges of the Courts).

[7]As this matter arises within the jurisdiction of the Ninth Circuit, we would be bound by the pertinent decisions of that court. *See Matter of Anselmo, supra.*

*v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74 (9th Cir. 1987); *Spraic v. United States R.R. Retirement Bd.*, 735 F.2d 1208, 1211 (9th Cir. 1984); *Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir.), *cert. denied*, 449 U.S. 975 (1980), there are virtually none addressing the issue with respect to the ruling of a district court. Reason would suggest that this would not be the case if the principles concerning the precedential value of circuit court decisions also applied to district court decisions. In fact, because of the large volume of district court decisions, one would expect a significant number of relevant cases to exist if the position stated in *Matter of Amado and Monteiro, supra*, were correct.

We have been able to uncover only two federal court cases which contain language directly contradicting the position which we adopt today: *Hillhouse v. Harris*, 547 F. Supp. 88, 91-93 (W.D. Ark. 1982), *aff'd*, 715 F.2d 428, 430 (8th Cir. 1983), and *Flores v. Secr. of Health, Educ. and Welfare*, 228 F. Supp. 877, 878 (D.P.R. 1964). Neither matter arose within the Northern District of California or the Ninth Circuit. Further, *Flores* did not cite any authority in support of its holding. While the judge in *Flores* admonished the subject federal agency for having failed to appeal from the adverse district court decision at issue, *see id.* at 878, as noted in *United States v. Mendoza, supra*, at 160-61, there may be reasons besides acquiescence to explain why an agency might not seek reversal or modification of a particular ruling. With respect to *Hillhouse v. Harris, supra*, we consider that the relevant analyses of both the district court and the reviewing circuit court are dicta. Additionally, they cite to supporting authority which pertains solely to the obligation of an agency to follow *the law of the circuit*.[8] *Id.*

## MERITS OF THE APPLICANT'S PERSECUTION CLAIM

After careful review, we find that the applicant has failed to establish eligibility for either asylum or withholding of exclusion and deportation.[9] *See* sections 208(a) and 243(h) of the Act; section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1988); 8 C.F.R. §§ 208.13, 208.16 (1993); *see also* 8 C.F.R. § 208.13(b)(2) (1993) (setting forth "reasonable possibility" requirement of well-founded fear asylum standard); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) (holding that asylum standard is more generous than withholding standard); *INS v. Stevic*, 467 U.S. 407 (1984) (defining withholding

---

[8] This Board has not followed a practice of nonacquiescence in circuit court decisions in cases arising within the same jurisdiction. *See Matter of Anselmo, supra*, at 30-31.

[9] We have assumed, arguendo, that the factual basis of the applicant's persecution claim is worthy of belief.

standard); *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989) (defining past persecution).

Specifically, having withdrawn from *Matter of Amado and Monteiro, supra*, and its progeny, we do not find ourselves obliged to follow the ruling of the district court in *Singh v. Ilchert, supra*, with respect to the merits of the applicant's persecution claim. While we have carefully examined the reasoning of the court, we respectfully disagree with its conclusions. *See Matter of R-, supra*.

Instead, we find that the analysis of the applicant's persecution claim is controlled by *Matter of R-, supra*. As we acknowledged in that ruling, extrajudicial police actions and separatist violence are, unfortunately, common occurrences in the Indian state of Punjab. *Id.* at 626. Nevertheless, as indicated by the United States Supreme Court in *INS v. Elias Zacarias*, 502 U.S. 478 (1992), an alien must do more than simply show physical abuse or civil rights or human rights violations in order to demonstrate persecution within the meaning of the Act.[10] *See also Martinez-Romero v. INS*, 692 F.2d 595 (9th Cir. 1982) (concerning general civil strife).

With respect to the applicant's fear of harm at the hands of Sikh extremists, we find that there is no persuasive evidence to show that their demands for material support implicated any of the protected grounds. *See Matter of R-, supra*, at 623-24. The mere fact that the terrorists may have had a generalized political agenda is insufficient to establish that they interpreted any hesitancy on the part of the applicant as a sign of opposition to their ultimate political goals. *Id.* Indeed, like the militants, the applicant favored the creation of an independent Sikh state. Moreover, we consider that he ultimately complied with their requests for food. His fear of retaliation as a perceived informer is not based upon any of the protected grounds. *See supra* note 10.

---

[10]On appeal, the applicant cites to the Ninth Circuit's decision in *Montecino v. INS*, 915 F.2d 518 (9th Cir. 1990), in support of his case. Pursuant to the Ninth Circuit's analysis, an ex-soldier's objectively reasonable fear of reprisal by guerrilla forces in a civil war setting automatically establishes eligibility for asylum. We find that the Ninth Circuit's reasoning has been effectively overruled by the decision of the Supreme Court in *INS v. Elias Zacarias, supra*. For example, the mere existence of a generalized political motivation underlying the actions of one side to a civil war is insufficient to establish persecution on account of political opinion for purposes of the Act. *Id.* at 482. There must be some direct or persuasive circumstantial showing that the persecutor's specific motives regarding the targeted individual are reasonably premised upon one of the protected grounds. *Id.* at 482-84.

In the alternative, we find that the applicant's situation is distinguishable from *Montecino v. INS, supra*, at 520, insofar as he indicated that the Punjab police and Sikh extremists viewed him as an active participant in the hostilities, as opposed to one who had abandoned his role.

In regard to the applicant's confrontations with the Indian security apparatus, the expert BHRHA advisory opinion notes that the authorities do not take action against individuals "solely as a result of their being members of the Sikh faith." It explains that "[i]ndividual Sikhs have been arrested and charged with involvement in specific violent acts, but not simply because they are members of that faith."

While we condemn the brutal methods of the Punjab police, the applicant has failed to establish that he was targeted on account of his political opinion or the mere fact that he was a Sikh. *See Matter of R-, supra*, at 624-25. There is no convincing evidence that the police interest in him involved anything more than the investigation of and reaction against those thought—rightly or wrongly—to be militants seeking the violent overthrow of the government. *Id.* Indeed, the record reveals that the applicant had ongoing contact with extremists.

In the alternative, we consider that the applicant's problems were confined to Punjab. *Id.* at 625-27. According to the BHRHA, large numbers of Sikhs lead "tranquil and productive lives in other parts of India." The applicant failed to cite to any persuasive background documentation in rebuttal. *See Matter of Dass*, 20 I&N Dec. 120 124-25 (BIA 1989). Rather, he simply offered his conclusory observation that he faces danger throughout India and that the police could find him anywhere.

Consequently, the applicant has failed to demonstrate either a well-founded fear or a clear probability of persecution on a country-wide basis, so as to establish statutory eligibility for asylum or withholding of exclusion and deportation, respectively. *See Matter of R-, supra*, at 10. Further, even assuming that the applicant suffered past persecution in Punjab on account of one of the protected grounds, he does not merit asylum in the exercise of discretion in view of the absence of a threat of persecution throughout India and the factual circumstances of his case. *Id.*

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.