# Matter of Benno RIVENS, Respondent

*Decided October 19, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  In order to establish that a returning lawful permanent resident alien is to be treated as an applicant for admission to the United States, the Department of Homeland Security has the burden of proving by clear and convincing evidence that one of the six exceptions to the general rule for lawful permanent residents set forth at section 101(a)(13)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(C) (2006), applies.

(2) The offense of accessory after the fact is a crime involving moral turpitude, but only if the underlying offense is such a crime.

FOR RESPONDENT:  Howard R. Brill, Esquire, Hempstead, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Susan Marie Beschta, Assistant Chief Counsel

BEFORE:  Board Panel:  PAULEY, GREER, and WENDTLAND, Board Members.

PAULEY, Board Member:

This case primarily addresses the issue of which party bears the burden of proof for establishing whether a returning lawful permanent resident is to be treated as an applicant for admission and is therefore subject to the inadmissibility grounds for removal, rather than the deportability grounds. It also addresses whether the respondent has been convicted of a crime involving moral turpitude—specifically, under what circumstances the offense of accessory after the fact constitutes such a crime, and whether the Immigration Judge employed the correct legal analysis in determining that the respondent's specific offense of being an accessory after the fact to the crime of making materially false statements or entries in violation of 18 U.S.C. § 1001 (2000) is not such a crime. The Department of Homeland Security ("DHS") has appealed from the Immigration Judge's June 2, 2009, decision terminating the removal proceedings against the respondent. The appeal will be sustained in part, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native of Romania and citizen of Israel who is a lawful permanent resident of the United States. On August 7, 1992, he was convicted in New York following a guilty plea to the offense of offering a false instrument for filing in the second degree in violation of section 175.30 of the New York Penal Law, for which he was sentenced to a term of 1 year of conditional discharge. The respondent was also convicted on May 26, 2000, in the United States District Court for the Southern District of New York upon a guilty plea to the offense of accessory after the fact in violation of 18 U.S.C. § 3 (2000), for which he was sentenced to a term of 2 years of probation, was assessed $100, and was required to pay restitution in the amount of $154,496. On March 29, 2007, the respondent applied for admission to the United States as a returning lawful permanent resident.

On September 7, 2007, the DHS served the respondent with a Notice to Appear on the basis of these convictions, charging that he is inadmissible as an alien convicted of a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006). The Immigration Judge determined that neither offense constituted a crime involving moral turpitude and found that the respondent was not removable as charged. He therefore terminated the removal proceedings.

## II. ANALYSIS

### A. Default Judgment

As an initial matter, we find no basis to affirm the Immigration Judge's decision to impose a "default judgment" against the DHS. The Immigration Judge did not provide, and we do not discern, any legal support for his conclusions that the DHS was required to submit a written brief to the Immigration Judge in support of the charge of removability, rather than resting upon verbal arguments at the hearing, and that the failure to comply with such a requirement permitted a "default judgment." We therefore decline to endorse this portion of the Immigration Judge's decision.

### B. Burden of Proof Under Section 101(a)(13)(C) of the Act

The DHS also contests the Immigration Judge's determination that it bore the burden of establishing the respondent's inadmissibility, rather than requiring the respondent to establish that he was not inadmissible. Section 101(a)(13)(C)(v) of the Act, 8 U.S.C. § 1101(a)(13)(C)(v) (2006), provides

in pertinent part that lawful permanent residents, such as the respondent, who are returning to the United States after traveling abroad, "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has committed an offense identified in section 212(a)(2)."[1]

Sections 240(c)(2) and (3)(A) of the Act, 8 U.S.C. §§ 1229a(c)(2) and (3)(A) (2006), now expressly allocate the general burden of proof where an alien is an "applicant for admission," claims to be "lawfully present in the United States pursuant to a prior admission," or "has been admitted." However, the Act remains silent with respect to the burden and standard of proof required to determine that an alien *is* an "applicant for admission" under sections 240(c)(2)(A) and 101(a)(13)(C) of the Act. *See generally Matter of Collado*, 21 I&N Dec. 1061, 1063-65 (BIA 1998). Moreover, the regulatory presumption benefitting lawful permanent residents who present a valid unexpired Permanent Resident Card (Form I-551) after a temporary absence of less than 1 year does not suggest an applicable burden or standard of proof under circumstances where the presumption does not apply. *See* 8 C.F.R. § 211.1(a)(2) (2011).

As a matter of first impression with respect to the application of section 101(a)(13)(C) of the Act, we find no reason to depart from our longstanding case law holding that the DHS bears the burden of proving by clear and convincing evidence that a returning lawful permanent resident is to be regarded as seeking an admission.[2] *See Matter of Huang*, 19 I&N Dec. 749, 754 (BIA 1988) (citing *Woodby v. INS*, 385 U.S. 276, 286 (1966), holding,

---

[1] We note that the Supreme Court recently granted certiorari on the question whether the definition of "admission" in section 101(a)(13)(C) of the Act applies to a returning lawful permanent resident who committed an offense identified in section 212(a) before the effective date of section 101(a)(13)(C). *Vartelas v. Holder*, 620 F.3d 108 (2d Cir. 2010), *cert. granted*, 79 U.S.L.W. 3594, 80 U.S.L.W. 3016 (U.S. Sept. 27, 2011) (No. 10-1211), 2011 WL1032166. The outcome of that case could potentially affect the respondent's inadmissibility for his 1992 offense of offering a false instrument, but it would not seem to have relevance with respect to his 2000 accessory after the fact offense.

[2] We have placed the burden of proof on the Government with respect to the status of returning lawful permanent residents for over 35 years. *See Matter of Kane*, 15 I&N Dec. 258 (BIA 1975). During this time, the relevant statutory and regulatory provisions have consistently allowed readmission after an absence of less than 1 year upon the presentation of the equivalent of a Permanent Resident Card and have permitted discretionary readmission of lawful permanent residents after a "temporary visit abroad," absent the otherwise-required documents. Compare the differing versions of sections 101(a)(27)(A) and 211(b) of the Act, 8 U.S.C. §§ 1101(a)(27)(A) and 1181(b), from 1970, 1982, and 2006; compare also 8 C.F.R. § 211.1(a)(2) (2011) with prior versions of the regulation at 8 C.F.R. § 211.1(b) in 1974 and 1987.

in the absence of a statutory standard, that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"); *Matter of Kane*, 15 I&N Dec. 258, 264 (BIA 1975); *see also Landon v. Plasencia*, 459 U.S. at 21, 35 (1982) (acknowledging the Board's practice at that time of placing the burden of proof on the Government with respect to returning lawful permanent residents in exclusion proceedings ). Given this historical practice and the absence of any evidence that Congress intended a different allocation or standard of proof to apply in removal cases arising under current section 101(a)(13)(C) of the Act, we hold that the respondent—whose lawful permanent resident status is uncontested—cannot be found removable under the section 212(a) grounds of inadmissibility unless the DHS first proves by clear and convincing evidence[3] that he is to be regarded as an applicant for admission, in this case by having "committed an offense identified in section 212(a)(2)."[4] Section 101(a)(13)(C)(v) of the Act. Thus, we find that the Immigration Judge properly allocated the burden of proof to the DHS in this matter and correctly employed a "clear and convincing" legal standard.

There remains an open question of who then bears the burden of showing admissibility, or a lack of inadmissibility, once it has been determined that an alien is an applicant for admission. However, we do not reach this issue, because it is unnecessary to address it to resolve the matter before us. The exception to the general rule in section 101(a)(13)(C) of the Act that potentially renders the respondent an applicant for admission, namely,

---

[3] *See* section 240(c)(3)(A) of the Act (stating that "the Service has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable"). Although Congress has omitted the term "unequivocal" that was included in the standard announced in *Woodby v. INS*, 385 U.S. at 286, we have no occasion to determine whether, or to what degree, this has effected a substantive change.

[4] We acknowledge that in a recent published decision, the United States Court of Appeals for the Third Circuit appears to have reached a different conclusion. In *Doe v. Att'y Gen. of U.S.*, No. 10-2272, 2011 WL 3930281 (3d Cir. Sept.8, 2011), the court found that the DHS could meet its burden of establishing that the exception in section 101(a)(13)(C)(v) of the Act had been met by showing that there was "probable cause to believe" that the alien had committed one of the crimes identified in section 212(a)(2) of the Act. *Id*. at *5. We respectfully disagree with this determination, because we find that it is based on an apparent misapprehension of the legal effect of treating a returning lawful permanent resident as an applicant for admission. *See Matter of Lok*, 18 I&N Dec. 101 (BIA 1981) (holding that a lawful permanent resident retains such status until the entry of a final administrative order of removal), *aff'd*, 681 F.2d 107 (2d Cir. 1982). In any event, it is not determinative in this case, which arises in a different circuit. *See Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993); *see also Matter of Anselmo*, 20 I&N Dec. 25, 30-32 (BIA 1989).

the commission of an offense identified in section 212(a)(2), coincides with the ground of inadmissibility charged by the DHS in the Notice to Appear, that is, a conviction for a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act. Thus, if the DHS establishes that the respondent is an applicant for admission under section 101(a)(13)(C)(v) of the Act, it will have de facto established the respondent's inadmissibility.

We now turn to the question whether the DHS has met its burden of proving by clear and convincing evidence that the respondent, a returning lawful permanent resident, is to be regarded as an applicant for admission because he committed an offense identified in section 212 of the Act, in this case, a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act.

### C. Inadmissibility Under Section 212(a)(2)(A)(i)(I) of the Act

We first address the respondent's conviction for accessory after the fact under 18 U.S.C. § 3. In 2000, that provision stated in pertinent part, "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." We have held that an alien convicted of accessory after the fact to manslaughter was convicted of a crime involving moral turpitude because the underlying offense, which was found to be voluntary manslaughter, was a crime involving moral turpitude. *Matter of Sanchez-Marin*, 11 I&N Dec. 264 (BIA 1965), *modified on other grounds*, *Matter of Franklin*, 20 I&N Dec. 867 (BIA 1994); *see also Cabral v. INS*, 15 F.3d 193 (1st Cir. 1994). We find this approach to be appropriate here and conclude that we must look to the underlying or substantive crime to determine whether it involved moral turpitude.[5]

The respondent argues on appeal that we are precluded from examining the underlying statute, citing to *Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997). In that case, we concluded that the offense of accessory after the fact to a drug-trafficking crime, in violation of 18 U.S.C. § 3, was not considered an inchoate crime and was not sufficiently related to a controlled substance violation to support a finding of deportability pursuant to former section 241(a)(2)(B)(i) of the Act, 8 U.S.C. § 1251(a)(2)(B)(i) (1994).

---

[5] This approach makes sense, because to be convicted of accessory after the fact under 18 U.S.C. § 3, a defendant must not only know that the person he or she assisted committed *some* felony offense but must also know what the particular offense was. *See, e.g.*, *United States v. Osborn*, 120 F.3d 59, 63 (7th Cir. 1997); *United States v. Henning*, 77 F.3d 346, 350 (10th Cir. 1996); *United States v. Bissonette*, 586 F.2d 73, 76 (8th Cir. 1978).

However, we expressly declined to address the question whether an accessory after the fact offense would also be a crime involving moral turpitude where the underlying or substantive crime of which the alien was convicted involved moral turpitude. Instead, we observed that "the issue whether the respondent's conviction might establish his deportability arising from a conviction for a crime involving moral turpitude is not before us." *Id.* at 957.

The respondent contends that the holding in *Matter of Batista-Hernandez* regarding the lack of "relatedness" of an accessory after the fact offense to the underlying controlled substance violation also dictates a finding that the accessory offense here lacks the attributes of a crime involving moral turpitude. We are not persuaded that the latter conclusion follows from the former, because the two issues are distinct. Acting as an accessory after the fact is generally treated as a less serious offense than the crime committed by the principal. *See, e.g.*, 18 U.S.C. § 3 (providing that the penalty for an accessory after the fact conviction is one-half the maximum penalty prescribed for the punishment of the principal). In light of that fact, it makes sense to find that an accessory conviction is only one for a crime involving moral turpitude when the aid is knowingly provided to help the principal escape prosecution or punishment for a base or vile crime. The turpitudinousness of the offense in that circumstance is not on account of the "relatedness" of the aid to the underlying crime of the principal. It is rather because helping a base criminal escape justice is more reflective of a breach of duty owed to society than when the principal has committed an offense that is not itself base or vile. Accordingly, we conclude that *Matter of Batista-Hernandez* is not controlling.

In addition, the respondent points out that in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), the Supreme Court indicated that while aiding and abetting offenses are necessarily included in the principal offense, accessory after the fact is distinct from the principal offense in all States and under Federal law. Thus, he argues that a conviction for accessory after the fact should not trigger the same immigration consequences as the underlying substantive offense. In support of his argument, he cites to the decision of the United States Court of Appeals for the Ninth Circuit in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), *overruled on other grounds by United States v. Aguila-Montes de Oca*, No. 05-50170, 2011 WL 3506442 (9th Cir. Aug. 11, 2011).

However, in our view *Navarro-Lopez* is reasonably read only as finding that the California accessory after the fact conviction in that case was not for a crime involving moral turpitude because the underlying offense was itself not a crime involving moral turpitude. *Id.* at 1071 (indicating that "[t]o hold that a conviction for accessory after the fact is necessarily a crime of moral turpitude leads to an absurd result where a principal who commits a crime

may not have undertaken a morally turpitudinous act, but the person who gave the principal food and shelter necessarily did"). Indeed, much of the Ninth Circuit's decision in *Navarro-Lopez* focused on examples of cases where a person was convicted of harboring or concealing principals who had not themselves committed crimes involving moral turpitude. *Id.* at 1072-73 ("Aiding and abetting such crimes would not demonstrate conduct involving moral turpitude. Acting as an accessory after the fact to such crimes should not necessarily do so either.").

However, we need not conclusively identify the proper interpretation of *Navarro-Lopez* to decide this case, because it arises in the jurisdiction of the Second Circuit. We are not bound to follow the published decisions of a court outside the circuit in whose jurisdiction the matter arises. *See Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993); *see also Matter of Anselmo*, 20 I&N Dec. 25, 30-32 (BIA 1989). Thus, we must look to the underlying or substantive crime in this case to determine whether it involved moral turpitude.

The conviction documents from the respondent's 2000 conviction establish that he pled guilty to Count 51 of the indictment. That count charges the respondent with having knowingly received, relieved, comforted, and assisted another person in order to hinder and prevent the apprehension, trial, and punishment of said person whom he "helped . . . to conceal the falsity of the Payrolls he had submitted in violation of Title 18, United States Code, Section 1001."

To determine whether an offense in violation of 18 U.S.C. § 1001 constitutes a crime involving moral turpitude, we employ the framework set forth by the Attorney General in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008). Under that framework, we first employ a categorical approach, under which the criminal statute at issue is examined to ascertain whether moral turpitude is intrinsic to all offenses that have a "realistic probability" of being prosecuted under that statute. *Id.* at 689-90, 696-98. Second, if the issue cannot be resolved under the categorical approach, we use a modified categorical approach, which requires inspection of specific documents comprising the alien's record of conviction to discern the nature of the underlying conviction. *Id.* at 690, 698-99. Finally, if the record of conviction is inconclusive, the Attorney General has held that, because moral turpitude is not an element of the crime, we may consider evidence beyond the record of conviction in evaluating whether the alien's offense constitutes a crime involving moral turpitude. *Id.* at 690, 699-701.[6]

---

[6] We acknowledge that the Third and Eleventh Circuits have disagreed with the procedural analysis set forth in *Silva-Trevino*, in particular with respect to the ability to go

(continued...)

The Immigration Judge's decision in this case does not meaningfully analyze whether an offense under 18 U.S.C. § 1001 is a crime involving moral turpitude under the *Silva-Trevino* framework, and we express no opinion on the subject.[7] We find a similar lack of meaningful analysis concerning the respondent's conviction under section 175.30 of the New York Penal Law. We therefore find it appropriate to remand the record for the Immigration Judge to determine whether either of the respondent's convictions is for a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act. If either conviction is found to be for a crime involving moral turpitude, it would render the respondent an applicant for admission and, in effect, inadmissible under section 212 of the Act. Accordingly, the DHS's appeal will be sustained in part, and the record will be remanded to the Immigration Judge.

**ORDER:** The appeal of the Department of Homeland Security is sustained in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

(...continued)

beyond the record of conviction in the third stage. *Sanchez Fajardo v. U.S. Att'y Gen.*, Nos. 09-12962, 09-14845, 2011 WL 4808171 (11th Cir. Oct. 12, 2011); *Jean-Louis v. Att'y Gen. of the U.S.*, 582 F.3d 462 (3d Cir. 2009). However, the Seventh Circuit seemingly deferred to the methodology in *Matter of Silva-Trevino* in *Mata-Guerrero v. Holder*, 627 F.3d 256 (7th Cir. 2010). This matter arises in the Second Circuit, which has not yet addressed the decision in *Silva-Trevino*, and in the absence of otherwise controlling authority, we and the Immigration Judges are bound to apply the procedural framework set forth by the Attorney General in that case.

[7] Violations of prior versions of 18 U.S.C. § 1001 have been determined not to categorically be crimes involving moral turpitude. *See, e.g.*, *Matter of Marchena*, 12 I&N Dec. 355 (R.C. 1967); *Matter of G-*, 8 I&N Dec. 315 (BIA 1959). *But see Ghani v. Holder*, 557 F.3d 836 (7th Cir. 2009) (addressing a more recent version of the statute).