MATTER OF NG

In Visa Petition Proceedings

A-20029181

*Decided by Board April 28, 1972*

The validity of the simple adoption of beneficiary under Chinese law and custom (Tsing Code) in Hong Kong in 1954 is not vitiated by the fact beneficiary is a female. The Tsing Code provided for two different kinds of adoptions: (1) a "ritual adoption", an adoption of a male to act in the ritual capacity of an heir to the ancestral cult associated with the agnatic lineage of the adopted father, and (2) a "simple adoption", an adoption of a male or female to stand in the relationship of son or daughter of the adoptive parent, but without acting in the capacity of an heir to the ancestral cult or lineage. [*Matter of Yiu*, 13 I. & N. Dec. 624, overruled.]

ON BEHALF OF PETITIONER:                    ON BEHALF OF SERVICE:
Charles J. Wong, Esquire                    R. A. Vielhaber
250 Columbus Avenue, Room 200               Appellate Trial Attorney
San Francisco, California 94133             (Brief filed)
(Brief filed)

The lawful permanent resident petitioner applied for preference status for the beneficiary as his unmarried daughter under section 203(a)(2) of the Immigration and Nationality Act. The District Director denied the petition in an order dated April 29, 1971, and the petitioner appeals. The appeal will be sustained.

The beneficiary is an unmarried female, born July 1, 1949 in Hong Kong, evidently of Chinese ancestry, who presently resides in Hong Kong. The file contains an adoption agreement stating that the beneficiary was adopted by the petitioner's wife on June 17, 1954. The petitioner, who was married to his spouse in Hong Kong in 1938, stated in his petition that he had last resided together with his wife in Hong Kong in 1948.

Section 203(a)(2) provides for visa preference for qualified immigrants who are the unmarried sons or unmarried daughters of an alien lawfully admitted for permanent residence. The beneficiary is unmarried and the petitioner is an alien lawfully admitted for permanent residence. There is no definition of "son" or "daughter" in the Immigration and Nationality Act, but "child" is defined in

section 101(b)(1). Subsection (E) defines "child" to include a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years. We have previously held that a child adopted in compliance with section 101(b)(1)(E) of the Act qualified as a "son" or "daughter" for purposes of receiving preference status, *Matter of Yue*, 12 I. & N. Dec. 747 (BIA, 1968).

We note that the two-year legal custody and residence requirement may be satisfied when custody and residence have been with only one of the adoptive parents, *Matter of Y—n—W—*, 9 I. & N. Dec. 176 (A.G., 1961). The file contains evidence that the petitioner's spouse has resided at her present address since at least 1961, and that the beneficiary resides at the same address. On the basis of this we presume that the residence and custody requirement has been met. The adoption in the present case took place before the beneficiary attained the age of fourteen years.

The District Director denied the petition because he was of the opinion that the beneficiary could not be considered an adopted child for purposes of section 101(b)(1)(E) because she is a female. He found that the validity of the adoption must be determined by Chinese law and custom, or the Tsing Code. The District Director cited this Board's decision in *Matter of Yiu*, 13 I. & N. Dec. 624 (BIA, 1970), as authority for the proposition that the adoption of a female is precluded under the Tsing Code. He accordingly denied the petition.

It is well settled that the validity of an adoption upon which an immigration status is grounded is governed by the law of the place where the adoption status was created, *Matter of R—*, 6 I. & N. Dec. 760 (BIA, 1961). In *Matter of Yue*, 12 I. & N. Dec. 747 (BIA, 1968), we held that the law of adoption applicable to Chinese domiciled in Hong Kong is Chinese law and custom.

Counsel has furnished us with an expert opinion prepared by Anthony Richard Dicks, a Barrister-at-Law in Hong Kong, who is also a Lecturer in Oriental Law at the University of London. Mr. Dicks defines "Chinese law and custom" as relating to Hong Kong to mean "the rules of law which were generally in force in the Chinese Empire on 5th April 1843 together with and subject to such rules of custom as were at that date and/or have thereafter been applied in China or any part thereof or in Hong Kong with the force of law." Chinese law and custom was described as "the common law of China" in a decision of the Supreme Court of Hong Kong, *Ho Tsz-Tsun* v. *Ho Au-Shi*, 10 H.K.L.R. 69 (1915). According to Mr. Dicks, this definition has been adhered to and applied by the courts of Hong Kong as denoting the customary law of China

"as partly evidenced by, but not necessarily as wholly defined by or confined to, the provisions of the statutory law of the late Ch'ing (Tsing) imperial dynasty as they were in force on 5th April 1843." We accept the expert opinion of Mr. Dicks on this point.

We agree with counsel that part of the confusion regarding Chinese adoption stems from the use of the words "formal" and "informal" to refer to the two kinds of adoption possible under the Tsing Code. In *Matter of Chin*, 12 I. & N. Dec. 240 (BIA, 1967), we endorsed the view that the Tsing (or Ching) Code provided for two kinds of adoption, each with different legal implications: (1) adoption of a male child for the purpose of instituting him as an heir for perpetuation of the ancestral cult, and (2) the adoption of a child, whether male or female, without intending to institute it as an heir. In *Matter of Yue, supra*, we referred to these two kinds of adoption as (1) a formal adoption, and (2) an informal adoption.

We agree that it would be better to distinguish between "ritual adoptions" and "simple adoption." Counsel would describe the first, as "an adoption by a childless married man or his widow of a male to act in the ritual capacity of an heir to the ancestral cult associated with the agnatic lineage of the adopted father," and the other as "the adoption of a male or female to stand in the relationship of son or daughter of the adoptive parent, but without acting in the capacity of an heir to the ancestral cult or lineage." This definition agrees with the classification used by the noted Dutch authority on Chinese law, Professor M. H. Van Der Valk, in his text, *An Outline of Modern Chinese Family Law* (Peking, 1939), at page 134. Van Der Valk refers to the simple or "informal" adoption simply as "an adoption."

This Board has on several occasions recognized the second kind of adoption as valid for immigration purposes, *Matter of Lung Chan*, VP3-I-123920 (BIA, unreported, April 30, 1962); *Matter of Chin*, 12 I. & N. Dec. 240, *supra*. The cases of *Matter of Yue*, 12 I. & N. Dec. 747 (BIA, 1968); and *Matter of Lung Chan*, VP3-I-123920 (BIA, unreported, April 30, 1962), both involved simple adoptions of a female in Hong Kong. In both cases we approved the petition.

The provisions of the Tsing Code dealing with adoption were construed by the Supreme Court of the Republic of China in 1918 to permit the adoption of a female child. See the reference to Appeal Case No. 195 found in *Matter of Yue, supra*, at page 748.

Our decision in *Matter of Yiu, supra*, was in conflict with these decisions recognizing simple adoptions. In *Yiu* we held that "Chinese customary law [in Hong Kong] permits adoption only for purposes of succession to the family and is limited to males." The authority cited in support of our holding was the *Report of the*

137

*Governor's Committee on Chinese Law and Custom in Hong Kong*, p. 200 (Hong Kong, 1948).

Petitioner's counsel asks that we reconsider and overrule our precedent decision in *Matter of Yiu, supra*, on the basis of new material not previously available to us. He points out that the authorities cited in the *Yiu* decision actually do *not* preclude the adoption of females under the Tsing Code.

For instance, Appendix 9 of the *Report of the Governor's Committee on Chinese Law and Custom in Hong Kong* was cited in footnote 2 to support the proposition that only the formal institution of a male child as an heir was permitted in Hong Kong. The expert opinions furnished by counsel support his position that the writer of the appendix was not expressing the official view of the Governor's Committee, but was merely stating his own personal opinion. Further, it appears that his remarks were confined to the subject of the formal institution of an heir.

An extract from a statement by Judge Russell of the Supreme Court of Hong Kong, appearing in the report of the Governor's Committee, was cited in footnote 3 in *Yiu*. Counsel calls to our attention the fact that the report of the Governor's Committee did not contain the full text of Justice Russell's *Report on Child Adoption and Domestic Service Among Chinese*. In fact, on page two of the report, discussing the legal effect of the simple adoption of females in Hong Kong, Justice Russell wrote the following:

> They have equal rights with natural-born daughters. They are provided with a dowry when married, but, like natural-born daughters, they have no other claim on the inheritance.

Based upon the foregoing, we conclude that counsel is correct in his contention that our decision in *Matter of Yiu, supra*, was in error. We accordingly overrule that decision on the basis of the new material before us that was unavailable when we decided *Yiu*.

Once our prior holding in the *Yiu* case is overruled, the legal basis for the District Director's denial of the present petition is gone. We reaffirm our earlier holding in *Matter of Yue, supra*, which recognized the possibility of the simple adoption of a female in Hong Kong. We shall proceed to resolve the present appeal on the basis of the legal principles set forth in *Matter of Yue, supra*, which antedated our decision in *Yiu*.

The evidence in the record establishes that a valid simple adoption of a female child took place in Hong Kong in 1949. The Service does not claim that there is no bona fide family unit. We hold that such an adoption meets the requirements of section 101(b)(1)(E) of the Act. We accordingly overrule the District Director and hold that the beneficiary is entitled to preference status under the provisions of section 203(a)(2) of the Immigration and

Nationality Act as the child of the petitioner. The following order shall be entered.

**ORDER:** It is ordered that the appeal be and the same is hereby sustained.

*It is further ordered* that the petition for preference classification filed by the petitioner pursuant to section 203(a)(2) of the Immigration and Nationality Act be and the same is hereby approved.